Our next case for this morning is United States v. Timm. Mr. Singleton. Mr. Timm's mental health history was the central facet of the entire sentencing process in this case, and Judge Stadmuller never addressed it at all. There was unique and compelling evidence submitted to the court, really from the very beginning of the process, initially brought up by the probation department when they were researching the PSI. They established that for seven years, from age five all the way to age 12, Mr. Timm spent that time, almost the entirety of it, in inpatient treatment for his mental health. So Mr. Singleton, let me ask you, I mean it's disturbing, you're right that the judge doesn't ever have a time when he says, and you've talked a lot about mental health, and so here's what I think about that. But what he does do, a couple of things. He does discuss whether he's going to discount for criminal history, whether he thinks that actually overstates the case, which is what the mental health evidence, one of the issues of mental health evidence is going to. He does put particular recommendations for mental health treatment in his sentence, and he does go down below where the government was interested in, there's a 30-month sentence, and it's a little unclear there. So I guess I have two questions. One of them is, is it possible to say that's enough, and the other is, if it is not possible to say that's enough, under cases like Cunningham, is it possible to say that the judge's failure to meet this requirement was harmless under these circumstances? Well, Your Honor, I think that to the question of harmless, if I can take that first, that you know, the reason that we have Cunningham-level analysis is so that we can have confidence, you know, that the court did in fact exercise discretion, and when we start looking to, you know, a number, we always have the number on these appellate cases. We always know what the sentencing range was, what the actual number was, and so we really can't deduce, you know, from, you know, the tea leaves what those numbers are, whether or not there was actual, you know, discretion exercised in arriving at that number. We know the input, we know the output, but it's what happens in between that's the problem. And I don't really see the judge, you know, in this case, addressing the mitigating factors that were relevant to that criminal history. I do, you know, note that he does give Mr. Tim an opportunity to get mental health treatment while in prison. That has more to do with his current needs. But we're talking about a person who attempted to commit suicide at age 11, had ripped all of his hair out before age 12, that he was diagnosed with bipolar disorder, early onset schizophrenia, ADHD, psychosis, oppositional defiance disorder, disruptive behavior disorder, anxiety disorder. It's enough to make your head spin. No, it's a terrible record, and he apparently has had a terrible life. I can see that. But I guess another question is how you think these are mitigating factors. Certainly, Your Honor, well, I mean, we looked, when we established these sentencing guidelines and we established a criminal history score, we expect courts to look at those. They do look at those. And that one, you know, the question is whether that score is actually reflective of the person's  Whether that is an accurate portrayal of the person's character. I think if you look at Judge Stadmuller's quotation, he certainly took that criminal history category and score and relied on it, essentially. Oh, yeah. He says, I don't usually see Roman numeral six, right? Right. But what he didn't consider at all on the record, I don't know if he considered it. I can't go inside of his mind. What he didn't consider on the record is how the circumstances that led to that criminal history behavior. But he can do that because he adopted the findings of the pre-sentence report, which said, detailed the disturbing childhood and mental health history. Right. Well, I mean, if he adopts it, he knows what's in there. He says he adopts it. So he did consider it. I don't know the adoption of the PSI. If that's the case, we've been doing this under the sentencing guidelines for years where the judge adopts the findings of the pre-sentence report without enumerating it. Right. And I'm not saying that he didn't adopt it, Your Honor. What I'm saying is that he didn't address the primary arguments and mitigations so that we understand that they were considered. So your point is that, yes, the judge takes these as facts, but he doesn't draw the line between those established facts and the sentence, as Cunningham seems to contemplate. Essentially, yes, Your Honor. These were crimes that were committed by a mentally ill individual under the supervision of a career criminal drug addict parent, and that it was not as... I get the sense from the transcript, though, that it wasn't really argued the way you're arguing it now. It certainly was argued that he had a horrible mental health history and a horrible childhood, but that with respect to the crimes, it seems to be focused on the short duration of the time that he committed the crimes that led to this sixth category, not so much that he was driven to crime because of his mental illness. Well, I think that what... I mean, I think the direct quote I could find was from Attorney Cotton in this case, was that when you look at the... I don't know what the actual word... The combination, though, essentially, of the mental health factors and his age at the time, and it's not very surprising in that case that we would have an individual act out in a way that he did. And then to take years later, and then to look back and say, well, he must be a terrible recidivist character of a person, because... I don't think it's all that surprising that he then engaged in the type of behavior he did, but I don't know that he ties it up, saying that it's driven by his mental health, which seems to be the point you're making here. Right. Well, I think that... I mean, as I recall that language is from the sentencing memorandum, and I would like to note that there was... This mental health was part of the record for the entire sentencing hearing. That's where I started. It was not only in the PSI council-drafted memorandum, drawing attention to it, which also his age at the time, drawing on case law that says juveniles are constitutionally different. And then in that memorandum, he ties all of those together, and he says, given this whole pattern of experiences, that we should not, as a court, find it surprising that when you throw a child out of a mental health facility into the supervision of a criminal parent, and then he's going to model that behavior because he's a child and because he's mentally ill and because he doesn't have the same ability to resist those temptations and those urges as an adult would. And so now when you come to a later sentencing period and you're looking at an adult, it's inappropriate to look at those younger offenses and not without at least considering the fact that there were mitigating circumstances that led to that behavior occurring at that time. Well, he said the judge saw it reflected the unmitigated fact that Tim had absolutely no respect for the law, and that he needed to have something to deter him from it, which is an incarceration. And he could have had 15 years. Well, that's correct. I would point, you know, he got a sentence that I would say was in line with what the government actually asked. I believe that the government actually asked for 120 months. He went with 114 months, but also ordered it consecutive to the Milwaukee County time, which was not, no position was taken by any party. I think if you add that in, I haven't done the math since I did the initial brief, I think it ended up being almost identical to 120 months. So he did actually get essentially the sentence that the government asked. He didn't, you know, so I don't think that you can read too much out of, you know, the number again. Like I said, we always have the number. The question is whether or not we can have confidence that the court actually considered these arguments that were really made. If you've got a person before you who apparently has no respect for the law, and who the judge, I assume, thinks is really going to repeat again, one of the few ways you can keep him from doing that is incarcerating. Certainly. Nobody was asserting that he shouldn't be incarcerated. The question, you know, one of these offenses. Well, for a period of time. Right. One of these offenses had a seven-year mandatory, you know, minimum sentence anyway, so he was going to get, you know, incarcerated. We were arguing for a seven-year sentence because we felt that that was appropriate. And we didn't feel that it was appropriate to base a longer sentence upon this, you know, prior criminal history level, which, you know, when you don't actually reflect and consider, the mitigating circumstances that that behavior arose from. This isn't, you know, a 35-year-old who engaged in these activities when he's 25. This is, I believe, he's 25 at the time of sentencing. You've got an individual who's 25 who, you know, Judge Stadmuller references all of his uncharged conduct, starting pretty much from 15, right after he gets out, you know, put in the place with his father, all the way up through age 17. Almost all of his criminal crimes were still while he was a juvenile. And so I think it's appropriate to consider those circumstances to be different than if this were an adult committing those crimes, or if this were a mentally sane person getting these crimes, or if this were a person who was actually able to exercise the individual thought and consideration and get themselves treatment. He wasn't in that position. He was a 17-year-old with, I mean, I've read the list, the severe mental health conditions that were being untreated through no fault of his own. And you know, that's relevant. And the fact that at every stage, this was considered and brought to this court's attention and at no point ever addressed in any way. You know, the term mental health does not really occur in the sentence except for when the court says that you can get mental health treatment while you're in prison. Right. If you will, that's your time. But I'll probably give you a minute. Thank you. Mr. Koenig. Good morning. May it please the court. My name is Jonathan Koenig. I represent the United States this morning. I'd like to begin by saying a few words about waiver. At the end of this- I'm sorry. I mispronounced your name. But Mr. Koenig, I don't, this is not a Garcia-Segura statement.  I don't know if you've heard of it. I don't know if you've heard of it. I don't know if you've heard of it. said what the court recommended there and said, you know, have I talked about all of your most significant mitigating arguments? Speak now or forever hold your peace. And the lawyer sometimes will say, yes, you have, in which case we found waiver. Or sometimes the lawyer will say, you know, Your Honor, you haven't talked about, you know, Mr. Tim's mental health history and we need to know why you've decided to discount that the way you have. And had that statement been made, I have no doubt that Judge Stadtmuller would happily have had that discussion. But this is just sort of an end, you know, is there anything else we need to do? It's a fair question, Your Honor, and you're quite right that Judge Stadtmuller did not use the preferred verbal formula. Even something to signal, it's right here on page 31 of the transcript, page 45 of the transcript. After appeal rights, you know, confer about appeals, are there any additional matters that we need to address, Ms. Honrath or Mr. Cotton? No, Your Honor. Placement at Oxford. I mean, it's over. It's not, this is not a waiver situation. Well, I would submit, Your Honor, that there was a time in this circuit when that question in everyone's mind would refer to BOP placement or misspellings in the record or sort of tying up loose ends. I would argue, however, that as of May 8th of this year, this court had decided, Donnelly, had decided Garcia-Segura, if the omission on the part of the judge was as glaring as they maintain, that question, even though it wasn't formulated in the preferred way, ought to have prompted defense counsel to say, Your Honor, I want to be clear. Did you consider, in giving this very generous sentence, did you consider my client's difficult childhood and mental health issue? Well, you can say that. I don't see a hint in that sentence that follows what the Garcia-Segura opinion said, and I've seen enough other district judges doing precisely what Garcia-Segura recommended, and it's great. I mean, it gets everything on the record. It's a very good procedure, so. We're big fans of the procedure as well, Your Honor, so I guess I'll just turn to the merits since we disagree about the waiver issue. The merits trouble me in that Cunningham, and actually for that matter the Supreme Court's decisions, contemplate that when you get to the 3553A stage of things, you've finished calculating the guidelines, we all are on the same page about that, significant, not everything we've said, you don't have to talk about everything, that's fine, but significant arguments in mitigation need explanation, and there really isn't a word of explanation from Judge Stattmuller about why he's unpersuaded that this rather unusually hideous mental health record doesn't sway him. So that's why I asked the question I did about harmless error, is there any, you know, should we overrule Cunningham, you know, what are we doing here? Your Honor, I would agree there's not an explicit discussion, obviously, it's just not there. It's just not there. I read it hoping that it would be, but it wasn't. In this case, I think it can reasonably be inferred from the record that the judge did consider these arguments. First of all, as Judge Kaney noted, he obviously read the PSR, the sentencing memorandum, he heard testimony from the defendant's father, which addressed the mental health issue, and as you noted, he ordered mental health treatment as a condition of supervised release. But that, as Mr. Singleton points out, could have to do with his current mental status, not the question, what was his mental state back when he was 15, 16, 17 years old committing these crimes. Perhaps it's changed. Maybe he's matured a little bit by the time he's 25, and there are all kinds of things. So I think there's a temporal ambiguity at best. Well, the argument was that his criminal history overstated his seriousness as a criminal, right? Right. So if you understand that his mental state was terrible back then, but now he's going to be better, that would be the argument, I suppose. Well, the other clue, the big clue we have, I think, is the actual sentence that the court gave. And we outlined this in our brief. He would have been 84 to 105 months as a Category 6 offender. As a Category 1 offender, and you can't go any lower than 1, he would have been 41 to 51 months. We argued for 36, and the judge elected 30. He says, in the record, Judge Stattmuller, for whatever reason, you have no respect for the law. He should have said more, obviously. That's pretty telegraphic. What did you say? He's being somewhat agnostic, but what he does is he, as to why, I don't understand why you do these things, for whatever reason. But then he focuses on the seriousness of the lack of respect that the defendant has for the law. And he's entitled to give that considerable weight. It's something to protect the public. Indeed, Your Honor. I mean, that's coming down to the very basic thing. This guy can have had the worst childhood as possible, but if he's going to be released and go back out and commit these crimes again, the judge has one method, and that's to keep him in jail or keep him in prison. And if the judge had said so, I don't think you'd even be here on appeal. There probably would have been an Anders brief, but the judge didn't say that. I agree, Your Honor. But in answer to your question, I do think, if you look at the record in its entirety and the disposition itself, there is a harmless error argument. I don't believe we use that phrase in our brief, but essentially that's what we're arguing when we ask the court to consider the focus of sentencing, which was overstatement of criminal history and then the actual disposition that was rendered in this case. So unless there's any further questions from the panel, I'd ask you to affirm the sentence. Thank you. Okay. Thank you very much. I'll give you a minute, Mr. Singleton. Thank you, Your Honors. I would just point out that this isn't a harmless error, and just because this is a below guideline sentence, we don't know where Judge Stadmuller would have been if he had actually considered the arguments that were before him, but it might have been closer to the sentence that was actually advised by the defendant of seven years and a day. So the fact that we have this number and the government apparently has an expectation of what it should have been, even though the sentence was right in line with what they actually asked for, we don't know how, if Judge Stadmuller had actually considered the argument before him, where he would have ended up. And that's why we really can't have certainty and confidence in this process. I understand Mr. Tim took the worst situation and probably made the worst of it. I'm not trying to say that he was entitled to leniency for leniency's sake. I'm not saying that we don't need to protect the public. But at the same time, he was entitled to a fair hearing, to have his mitigating arguments considered by the court, and there's no evidence that this gives this court enough security and confidence in this case that those mitigating arguments were actually considered, even if the sentence would have come out exactly the same way. We just do not have the record in this case to know that we got a fair hearing. Thank you, Your Honor. All right. Thank you very much. And you were appointed, were you not, Mr. Singleton? A little bit. You were appointed by the court? No, I was Attorney Commons. Oh, okay. Your firm was. Your firm was. Well, we thank you for your help. We certainly thank the government as well, and we'll take this case under advisement.